[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
PERMANENT INJUNCTION AND FINAL ORDER
WHEREAS, the parties in this action stipulated to the entry of a permanent injunction on the record and said permanent injunction was entered by this Court, Langenbach, J., on February 18, 1994.
AND, WHEREAS, the parties acknowledge, for purposes of this Order, that the following constitute trade secrets of Otis Elevator Company (collectively "Trade Secrets"):
A. the Otis Elevator Company ("Otis") source code of the software for the Otis Elevonic(c) 101/401 elevator systems (the"Source Code") including summaries and link maps;
B. the addresses, functions and operations of the installation and maintenance ("IM") routines in the control software for the Otis Elevonic(c) 101/401 elevator systems, including, but not limited to:
 (1) the commands and protocols used to activate the IM routines;
 (2) the nature and structure of the data stores accessed and modified by the IM routines; and
(3) labels and naming conventions.
C. The Otis Operator's Maintenance Terminal (or Tool) (the"OMT") and the EDT, including: CT Page 12973
 (1) Any software, including both source and object code, for use with the OMT or EDT or derivatives thereof, including, but not limited to:
 a. the commands and arguments generated by the OMT and/or the EDT for each test or procedure;
 b. the structures in which data are received by the EDT and/or the OMT from the controller;
 c. the addresses, structure, organization, timing, sequence, functions and parameters of modules, routines and subroutines;
d. the manner in which modules are linked together;
 e. the addresses, nature and structure of the OMT's and/or EDT's data stores;
 f. the OMT and/or EDT states, labels, naming conventions, control strategies and performance parameters; and
 g. OMT and/or EDT test codes, identification numbers, combinations of tests, diagnostics, sequences of tests and sequences of diagnostics.
 (2) The functions and manner of operating the OMT to the extent not publicly disclosed in the United States Patent No. 4,561,093, including, but not limited to:
a. the types of tests and procedures it performs; and
 b. the interpretation of the data displayed by the device.
 (3) The OMT itself, its internal structure, design and components; and
 (4) Schematics, specifications, plans, drawings, and blueprints for the OMT.
 AND, WHEREAS, the Defendants have tendered payment to Otis in accordance with the stipulation between the parties. CT Page 12974
NOW, THEREFORE, this Permanent Injunction and Final Order ("Order") hereby memorializes the permanent injunction entered on February 18, 1994, some of the terms of which are defined in the Appendix A attached hereto, and it is hereby
1. ORDERED, ADJUDGED AND DECREED that:
A. The Defendants and their attorneys are permanently enjoined from acquiring, copying, using, preparing derivative works or disclosing the Trade Secrets, or using or disclosing any devices which embody or contain any of said Trade Secrets or which were designed or manufactured by or with the assistance of the Trade Secrets.
NOTHING IN THIS PARAGRAPH A shall preclude Defendants from using or disclosing any information or thing:
 (1) that is or becomes generally available to the public or the industry through the lawful acts of persons not affiliated with Defendants;
 (2) that is independently developed by Defendants without use of the Trade Secrets;
 (3) that is received from third parties who acquired such information by lawful means without obligation of confidentiality and without breach of any obligation of confidentiality owed by that third party to Otis; or
 (4) that is reverse engineered as may be permitted by law from information lawfully acquired at a later date, including, but not limited to, lawfully decompiled or disassembled object code of the control software in Otis Elevonic(c) 101/401 elevators.
B. The Defendants, including their attorneys, are permanently enjoined from acquiring, copying, using or disclosing the OMT, the EDT, the Millar Tool and Y.C. Ho Tool, in any form, or any other device developed, leased, sold or licensed by or for any of the Defendants which was developed with, incorporates or uses or otherwise benefits from access to or use of the Trade Secrets, and any materials developed or prepared in connection with the development of any of such tools and devices. CT Page 12975
C. The Defendants, including their attorneys, are permanently enjoined from acquiring, accessing or otherwise obtaining Trade Secrets from anyone whom the Defendants know or should know, directly or indirectly, have any obligation, contractual, fiduciary or otherwise, not to use or disclose such information.
D. The Defendants shall make good faith efforts to locate, obtain and return to Otis those documents and parts relating to Elevonic(c) elevators. Such good faith efforts to locate and obtain those documents and parts shall consist of a request by the Defendants to their regional managers to look for and return all such documents and parts, and the regional managers shall sign a letter to the effect that they have done so. The Defendants shall deliver to Otis any and all documents, parts and materials relating to Elevonic(c) elevators of which they are aware, including those disclosed through the above-described process. Any documents and parts returned to Otis pursuant to this paragraph D shall be held in escrow by Otis for any necessary, future reference.
E. Millar is permanently enjoined from involving in future development efforts individuals directly involved in the development effort of the Millar Tool and Y.C. Ho Tool.
2. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that through February 18, 1995, Otis agrees to make available, upon request of the building owner or manager or Defendants' counsel (collectively "the Requester") to Otis or to Plaintiff's counsel and upon acceptance of the below terms by the building owner or manager, Otis mechanics and an Otis OMT operated by such mechanics, at Otis' open hourly rate and standard commercial terms, for the following buildings: North Park Four and Highland Park buildings in Dallas, Texas, the Towers at Harbor Court Condominiums in Baltimore, Maryland, the Texaco building in New Orleans, Louisiana and Eli Lilly Headquarters, building 74, in Indianapolis, Indiana.
Otis agrees to bill the Requester of such services for no more than two Otis employees being sent to the job site without the approval of the Requester. Notwithstanding the foregoing, Otis may send and bill the Requester for more than two Otis employees if it is required to do so by code or union rules or written Otis safety procedures. Otis reserves the right to provide all services only in accord with Otis safety practices CT Page 12976 and requirements. Said practices and requirements shall be consistent with those of the elevator industry. Otis further agrees to sell printed circuit boards to the Requester for which board's Defendants may take delivery of upon the return of the same defective board or, at its choice, the Requester may purchase printed circuit boards at a reasonably higher price without returning defective boards.
3. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that:
A. Any press release issued relative to the settlement of this lawsuit shall be in the form as attached hereto as Appendix B. Otis further agrees to limit all employee distributions to the form of Appendix B.
B. The contents of the Order are to be treated as confidential and shall not be disclosed outside of either company except as provided herein.
C. Nothing herein shall prevent the parties from disclosing the contents of the Order to the extent necessary to comply with the terms and conditions thereof.
D. Nothing in this provision shall prevent information from being disclosed in response to judicial process including enforcement of the terms hereof and discovery requests or government inquiry.
4. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this settlement is in full satisfaction of all claims brought forth or that could have been brought relating to the factual basis contained within Otis' Amended Complaint, including any federal actions, RICO claims, copyright actions, claims against individuals and the like. Both parties recognize that there are other outstanding disputes that exist between the parties that can be resolved in other forums at other times.
5. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Order is a final determination and the normal principles of collateral estoppel and res judicata lie as to this judgment.
6. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this judgment is without costs to either party.
Hartford, Connecticut CT Page 12977 January 30, 1995
Langenbach, J.
APPENDIX A
The following definitions shall apply to the terms set forth below as they appear in the Order:
1. "Defendants" collectively shall refer to Schindler Elevator Corporation ("Schindler") and its unincorporated division, Millar Elevator Service Company ("Millar"), together with their officers, directors, agents, servants, employees and anyone acting in concert or privity therewith.
2. The "Millar Tool" shall refer to all versions of the computer software, including both source and object code, used with a laptop computer developed by Millar as a diagnostic tool for use with Otis Elevonic(c) 101/401 and Microprocessor Based Group Controller ("MPGC") elevators;
3. The "EDT" shall refer to the Educational Diagnostic Tool, and any and all versions thereof, inclusive of any and all versions of software therefor, which is a tool developed by P.C. X-Change, Inc. to diagnose the Otis Elevonic(c) 101/401 and MPGC elevators and is subject to a Court Order enjoining its use or disclosure in U.S. District Court for the Northern District of Illinois in an action entitled P.C. X-Change, Inc. v. OtisElevators Company, Civil Action 91 C 7590; and
4. The "Y.C. Ho Tool" shall refer to all versions of the computer software used with a laptop computer for servicing Otis Elevonic 101/401 and MPGC elevators developed by Schindler Elevator Corporation of Canada, an affiliate of Defendants Schindler and Millar, and such tool being a derivative of the "EDT".
APPENDIX B
 Trade Secrets Infringement Suit Results in Injunction Against Millar Elevator Service Company
FARMINGTON, CT, December XX, 1994 — United Technologies' Otis Elevator Company said today that the Connecticut Superior Court has issued a permanent injunction against Millar Elevator CT Page 12978 Service Company, the result of a suit filed by Otis claiming misappropriation of its trade secrets. Millar is a division of Schindler Elevator Corporation, U.S.
The injunction bars the companies from using a diagnostic tool which was developed by Millar in the United States for servicing of Otis' Elevonic(c) 101, Elevonic(c) 401 and Microprocessor Based Group Controller (MPGC) elevator systems. Schindler Elevator Corporation was not separately accused of any misappropriation.
The suit, filed by Otis in August 1993, alleged the misappropriation of trade secrets by Millar and involved a former Otis employee who had access to certain company proprietary information. An initial injunction was issued on February 18, 1994.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 1